HONORABLE RICHARD W. ROBERTS, UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Docket No.: 05-CR-427 |
| vs. | : | |
| SAHONERO, Mario | : | Disclosure Date: May 16, 2006 |

## RECEIPT AND ACKNOWLEDGMENT OF PRESENTENCE INVESTIGATION REPORT

This is to acknowledge that each of the undersigned has received and reviewed the Presentence Investigation Report (PSR) in the above-entitled case. The undersigned further acknowledges that:

### For the Government

(CHECK APPROPRIATE BOX)
( ) There are no material/factual inaccuracies therein.
( ) There are material/factual inaccuracies in the PSI report as set forth in the attachment herein.

_____                    _____
**Prosecuting Attorney**                                               Date

### For the Defendant

(CHECK APPROPRIATE BOX)
( ) There are no material/factual inaccuracies therein.
(V) There are material/factual inaccuracies in the PSI report as set forth in the attachment.

X _____          _____ 26 MAY 06
**Defendant**          Date          **Defense Counsel**          Date

### NOTICE OF OBLIGATION OF THOSE EXECUTING THIS FORM

Pursuant to Local Rule 32(f)(2), those executing this form shall first submit any material inaccuracies or disputes in writing by May 30, 2006, to U.S. Probation Officer Renee Moses-Gregory, telephone number (202) 565-1348, fax number (202) 273-0242.

Pursuant to Rule 32(b)(6)(B), effective December 1, 1994, it shall be the responsibility of the Attorney for the Government and the Defense Counsel to provide each other with a copy of the objections at the same time the objections are filed with the probation office.

FOR THE COURT

By: Richard A. Houck, Jr., Chief
United States Probation Officer

# ANTHONY D. MARTIN

Attorney and Counselor at Law
7841 Belle Point Drive
Greenbelt Maryland, 20770
Telecopier (301) 220-0791

Anthony D. Martin                                           Writer's Direct Dial:
Licensed in DC & MD                                         (301) 220-3700

May 30, 2006

Ms Renee Moses-Gregory
United States Probation Officer
United States District Court
333 Constitution Avenue
Washington, DC 20001
<u>PRIVATE AND CONFIDENTIAL</u>

Re: <i>United States v. Mario Sahonero</i><br>Criminal Dkt No.:    05-CR-427 JR

Dear Mrs. Gregory:

    I have reviewed the Pre-Sentence Report (hereinafter PSR) dated May 15th, 2006, with Mr. SAHONERO. Please note my comments and/or objections and call me to discuss them further if you like.

### THE COVER PAGE
    With respect to my address, please note the firm, mailing address and telephone number have been changed. The correct information appears on the above letterhead.

### PART A – THE OFFENSE
1. The penultimate sentence of **Paragraph 9** should be stricken in its entirety. (*The bullet entered and exited the dog, went through the first floor and ultimately was located in the basement area.*) No autopsy of the dog was ever done and the number of bullets on the various diagrams does not square with the presumed path of any of the rounds. It is a small point for sure, but one of many that the defense intended to point out if the case had gone to trial.
2. **Mr. Sahonero contends that Paragraph 10** is only partially correct. He avers that the lighting was poor at the time Detective Ramadham entered the basement.
3. **Paragraph 11** attempts to attribute all of the items seized in the basement to Mr. Sahonero. The fact of the matter is that only the Raven .25 handgun, the Davis 9mm derringer and the bag of marijuana found in his pants belonged to Mr. Sahonero. He denies ownership of any of the contraband found in the common area outside of his bedroom.

**No objections or comments are noted with respect to The Base Offense Level**

## PART B – CRIMINAL HISTORY
4. Mr. SAHONERO objects to the report reflecting, at **paragraph 30**, an arrest for an offense that was ultimately dismissed by the Commonwealth of Virginia.

## PART C – OFFENDER CHARACTERISTICS
5. Mr. SAHONERO notes a few discrepancies with respect to **paragraph 33**. The fifth line should read as follows: *...lacked the **parenting skills**, which he has developed over the years.* The last clause appearing on the fifth line from the bottom should read: *he only remained there for one **month** before he was returned to the state.* The fourth line from the bottom should read: *The defendant remained in foster care until age 17.*
6. With respect to **paragraph 39**, Mr. Sahonero notes that he is 5' 7"tall. **Paragraph 40** should note that he remained in the hospital for only a few hours against medical advice. The doctors wanted to observe him for a few days, but the Department of Corrections refused to have him stay longer than they felt was necessary. Paragraph 50, line 3 should read: *He voluntarily left this employ because of the distance from work to home.*

## PART D – FINES AND RESTITUTION
7. Mr. SAHONERO is indigent and holds no assets in the United States or Bolivia. In short, other than the money he might earn while incarcerated he has no funds.

## PART E – SENTENCING OPTIONS
8. Mr. SAHONERO notes that he is ineligible for most if not all of the programs that are available in the Bureau of Prisons because of his immigration status. In addition, he is not subject to release to a half-way house within six (6) months of completion of his term of incarceration, for the same reason. Moreover, he can expect to be placed with the most violent offenders in the system, because he is not eligible for housing in a minimum security facility. Finally, he will spend a significant portion of his life in custody away from his siblings and his mother, all of whom are living in the United States. Based on these and other reasons[1] enumerated in *United States v. Smith*, 27 F.3d 649 (DC Cir. 1994) and *United States v. Gomez*, 431 F.3d 818 (DC Cir. 2005), the PSR should be amended accordingly.

## MISCELLANEOUS CONSIDERATIONS
9. Except for the instant offense, Mr. SAHONERO has no history of violence or weapons offenses. Moreover, it should be noted that of the three persons arrested at 772 Harvard Street on July 28th, 2005, only Mr. SAHONERO remains in custody. At least

---

[1] First, his status as a deportable alien renders him almost certainly ineligible for the benefits of 18 U.S.C. § 3624(c), which directs the Bureau of Prisons, to the extent practicable, to assure that prisoners spend part of the last 10% of their sentences (but no more than six months) under conditions-possibly including home confinement-that will "afford the prisoner a reasonable opportunity to adjust to and prepare for his re-entry into the community". Bureau of Prisons regulations bar non-U.S. citizens from assignment to a Community Corrections Center except in what appear to be rare circumstances. See Federal Bureau of Prisons, Program Statement 5100.04: Security Designation and Custody Classification Manual, Ch. 2-9 (June 15, 1992). More important, Bureau of Prisons policy prevents him from being assigned to serve *any* part of his sentence in a minimum security prison.